# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER RADUNSTEV,<br><br>    Petitioner,<br><br>    v.<br><br>KRISTI NOEM, <u>et</u> <u>al.</u>,<br><br>    Respondents. | Case No. ED CV 26-00969 FMO (ACCV)<br><br>**ORDER RE: APPLICATION FOR PRELIMINARY INJUNCTION** |

On March 1, 2026, Alexander Radunstev ("petitioner") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") against Kristi Noem, Secretary of the U.S. Department of Homeland Security ("DHS"); Pamela Bondi, Attorney General of the United States; Todd Lyons, Acting Director of Immigration and Customs Enforcement ("ICE"); Jaime Rios, Acting Director of the Los Angeles ICE Field Office; and Fereti Semaia, Warden of the Adelanto ICE Processing Center; in their official capacities, as well as DHS, ICE, and the Executive Office for Immigration Review ("EOIR") (collectively, "respondents"). (<u>See</u> Dkt. 1, Petition at ¶¶ 21-28). Petitioner also filed an <u>Ex</u> <u>Parte</u> Application for Temporary Restraining Order ("Application"), seeking his immediate release and an order enjoining respondents from re-detaining him absent further order of the court. (<u>See</u> Dkt. 6, Application at 2). Because the standards for granting a TRO and a preliminary injunction are the same, <u>see</u> Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n. 7 (9th Cir. 2001), the court converted petitioner's Application to an

application for a preliminary injunction ("PI Application").  (Dkt. 8, Court's Order of March 4, 2026, at 1).  Respondents filed their Opposition ("Opp.") to the PI Application on March 6, 2026, (Dkt. 10, Opp.), and petitioner filed a Reply on March 9, 2026.  (Dkt. 11, Reply).

Having reviewed and considered all the briefing filed with respect to petitioner's PI Application, the court finds that oral argument is not necessary to resolve the PI Application, see Fed. R. Civ. P. 78; L. R. 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## BACKGROUND

Petitioner is a citizen of Russia who was paroled into the United States on September 21, 2021, and released from custody on his own recognizance that same day.  (Dkt. 1, Petition at ¶ 43); (Dkt. 11-1, Declaration of Alexander Radunstev ("Radunstev Decl.") at ¶ 5); (see Dkt. 6-3, DHS Form I-220A, Order of Release on Recognizance at ECF 1-3).  "At an ICE check-in on September 21, 2022, petitioner was issued a Notice to Appear, charging him with inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i) for lacking proper entry documents at the time he sought admission, and was placed in removal proceedings[.]"  (Dkt. 1, Petition at ¶ 45); (see Dkt. 6-6, Notice to Appear at ECF 1-4).  Since being paroled, petitioner has established residence in Glendale, California, with his wife and son, and recently started a business.  (See Dkt. 1, Petition at ¶ 46); (Dkt. 11-1, Radunstev Decl. at ¶ 6); (Dkt. 6-2, Declaration of Svetlana Radunsteva ("Svetlana Decl.") at ¶ 6).  He has complied with all the conditions of his parole, including appearing for required check-ins with the local ICE Field Office.  (Dkt. 1, Petition at ¶ 47); (Dkt. 11-1, Radunstev Decl. at ¶ 8).  Petitioner has had no criminal history since his release.  (Dkt. 1, Petition at ¶ 47); (Dkt. 11-1, Radunstev Decl. at ¶ 9).

On May 31, 2022, petitioner's wife submitted an affirmative application for asylum with the United States Citizenship and Immigration Services.  (Dkt. 1, Petition at ¶ 44); (Dkt. 6-2, Svetlana Decl. at ¶ 6).  On March 31, 2023, petitioner's wife filed a defensive asylum application listing petitioner as a derivative applicant.  (Dkt. 1, Petition at ¶ 46); (Dkt. 6-2, Svetlana Decl. at ¶ 7).

Petitioner was arrested by ICE on January 22, 2026, during a check-in at the local ICE Field Office.  (See Dkt. 1, Petition at ¶ 48); (Dkt. 11-1, Radunstev Decl. at ¶ 10).  At the time of his

arrest, "ICE officers informed him that there was an Interpol Notice seeking his arrest in Russia." (Id.).  "Petitioner was given no other information about his re-detention, nor was he provided an opportunity to contest his detention[,]" nor has he had a bond redetermination hearing before an immigration judge.  (Id. at ¶¶ 49-50).  Petitioner has been detained at Adelanto ever since his arrest.  (Id.); (Dkt. 11-1, Radunstev Decl. at ¶¶ 11-12).

Petitioner alleges that his detention violates his substantive and procedural due process rights under the Fifth Amendment's Due Process Clause, and constitutes an unreasonable seizure in violation of the Fourth Amendment.  (See Dkt. 1, Petition at ¶¶ 51-69).

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 provides courts with the authority to issue preliminary injunctions or temporary restraining orders ("TRO").  See Fed. R. Civ. P. 65(a) & (b).  The purpose of a preliminary injunction "is to preserve the status quo and the rights of the parties until a final judgment" on the merits can be rendered, see U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010), while the purpose of a TRO is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing" for the preliminary injunction.  Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty., 415 U.S. 423, 439, 94 S.Ct. 1113, 1124 (1974)).  The standards for a temporary restraining order and a preliminary injunction are the same.  See Stuhlbarg Int'l Sales Co., 240 F.3d at 839 n. 7; NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P., 788 F.Supp.2d 1111, 1117 (C.D. Cal. 2011) (same).  "Like a preliminary injunction, a temporary restraining order is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'"  Six v. Newsom, 462 F.Supp.3d 1060, 1067 (C.D. Cal. 2020) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22, 129 S. Ct. 365, 376 (2008)).

A petitioner seeking a preliminary injunction or TRO must establish that:  (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.  Winter, 555 U.S. at 20, 129 S.Ct. at 374.  Under the Ninth Circuit's "sliding scale" approach, "the

elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). "For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." Id. The last two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435, 129 S.Ct. 1749, 1762 (2009).

**DISCUSSION**

I.      LIKELIHOOD OF SUCCESS ON THE MERITS.

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693, 121 S.Ct. 2491, 2500 (2001). "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." Trump v. J. G. G., 604 U.S. 670, 673, 145 S.Ct. 1003, 1006 (2025) (internal quotation marks omitted). Although "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process[,]" Demore v. Kim, 538 U.S. 510, 523, 123 S.Ct. 1708, 1717 (2003), due process "requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127, 110 S.Ct. 975, 984 (1990).

Petitioner's procedural due process claim involves two steps: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Fernandez Lopez v. Wofford, 2025 WL 2959319, *3 (E.D. Cal. 2025) (internal quotation marks omitted). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600 (1972). To determine what protections due process demands in a given situation, courts consider the: (1) private interest that will be affected by the official action; (2) risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional safeguards; and (3) government's interest, including the function involved and the burdens that would be

4

imposed by additional process.  See Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903 (1976).

A.      Petitioner Possesses a Protected Liberty Interest.

Here, petitioner invokes "the most significant liberty interest there is – the interest in being free from imprisonment." Velasco Lopez v. Decker, 978 F.3d 842, 851 (2d Cir. 2020).  While "the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if they fail to live up to the . . . conditions of release.'" Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. 2025) (alteration marks omitted).  Accordingly, "[w]hen an immigrant is placed into parole status after having been detained, a protected liberty interest may arise[,]" and the "Due Process Clause may protect this liberty interest even where a statute allows the immigrant's arrest and detention and does not provide for procedural protections." Espinoza v. Kaiser, 2025 WL 2675785, *9 (E.D. Cal. 2025).

Respondents contend that petitioner is detained pursuant to 8 U.S.C. § 1225(b), which authorizes petitioner's ongoing mandatory detention and renders him "ineligible for custody redetermination by the Court." (Dkt. 10, Opp. at 3-4).  However, respondents' decision to grant parole to petitioner in 2021 "reflect[ed] a determination by the government that the noncitizen is not a danger to the community or a flight risk." Fernandez Lopez, 2025 WL 2959319, at *2 (internal quotation marks omitted).  The grant of parole "constituted an implied promise that [his] liberty would not be revoked unless [he] failed to live up to the conditions of [his] release." Pinchi, 792 F.Supp.3d at 1034 (internal quotation marks omitted); see e.g., J.U. v. Maldonado, 805 F.Supp.3d 482, 487, 497 (E.D.N.Y. 2025) (finding that noncitizen petitioner who had been released from ICE custody on his own recognizance gained a "clearly established" liberty interest under Mathews).  In short, petitioner has a protected liberty interest in remaining out of custody absent a showing that he poses a risk of flight or danger.[1]  See, e.g., Espinoza, 2025 WL

---

[1] Moreover, the community ties established by petitioner "underscore the high stakes of [his] liberty." See Pinchi, 792 F.Supp.3d at 1033.  During the years between his release and arrest, petitioner has lived with his wife and son, has started a business, complied with all the conditions

2675785, at *10-11 (finding that petitioners released from immigration detention on their own recognizance had "substantial private interests in being out of custody"); Noori v. Larose, 807 F.Supp.3d 1146, 1157, 1164 (S.D. Cal. 2025) (finding that petitioner who was paroled from immigration detention under § 1182(d)(5)(A) had protected liberty interest in remaining out of custody).

B.     Risk of Erroneous Deprivation is High.

Under the circumstances, due process requires that respondents provide petitioner with notice and a pre-deprivation bond hearing prior to revocation of his parole.  See, e.g., Ramirez Tesara v. Wamsley, 800 F.Supp.3d 1130, 1137 (W.D. Wash. 2025) (granting TRO and ordering that petitioner, who was re-detained months after the expiration of his parole, "should be released and only re-detained after a hearing [in] front of an immigration judge"); Valdez v. Joyce, 803 F.Supp.3d 213, 219 (S.D.N.Y. 2025) ("In the context of revocation of civil release, an individual whose release is sought to be revoked is entitled to due process such as notice of the alleged grounds for revocation, a hearing, and the right to testify at such a hearing.") (internal quotation marks omitted).  Here, there is no evidence, nor even a suggestion, that respondents employed any procedural safeguards before detaining petitioner.  (See, generally, Dkt. 10, Opp.).  In short, the court finds that the risk of an erroneous deprivation of petitioner's liberty interest is high.  See, e.g., Fernandez Lopez, 2025 WL 2959319, at *6 ("[T]he risk of an erroneous deprivation [of liberty] is high where, as here, [the petitioner] has not received any bond or custody redetermination hearing.") (internal quotation marks omitted); Escobar Salgado v. Mattos, et al., 2025 WL 3205356, *24 (D. Nev. 2025) ("The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioners without any individualized showing of why their detention is warranted, nor any process for Petitioners to challenge the exercise of that discretion.").

C.     Respondents' Interest Does Not Outweigh the First Two Factors.

---

of his parole, and has had a derivative asylum application pending since March 2023.  (See Dkt. 1, Petition at ¶¶ 43, 46-47); (Dkt. 6-2, Svetlana Decl. at ¶ 6).

"As to the third and final Mathews prong, the Attorney General's discretion to detain individuals . . . is valid where it advances a legitimate governmental purpose, such as ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." Maldonado, 805 F.Supp.3d at 498 (internal quotation marks and alterations omitted). But respondents do not contend that petitioner was detained for such purposes. (See, generally, Dkt. 10, Opp.). Indeed, petitioner has complied with all the conditions of his parole, including appearing for required check-ins with the local ICE Field Office, (Dkt. 1, Petition at ¶ 47), and there is nothing in the record to establish that petitioner poses a flight risk or a danger to the community. Thus, respondents have "failed to show a significant interest in Petitioner's continued detention." Maldonado, 805 F.Supp.3d at 498.

Because each of the Mathews factors favors petitioner, the court finds that he has shown a likelihood of success on the merits of his procedural due process claim.[2]

II.     LIKELIHOOD OF IRREPARABLE HARM.

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690 (1976)); see Hernandez v. Sessions, 872 F.3d 976, 994-95 (9th Cir. 2017) (recognizing the "irreparable harms imposed on anyone subject to immigration detention" and holding that plaintiffs had "established a likelihood of irreparable harm by virtue of the fact that they are likely to be unconstitutionally detained for an indeterminate period of time"). Where "an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." Warsoldier v. Woodford, 418 F.3d 989, 1001-02 (9th Cir. 2005) (internal quotation marks omitted). Here, there is no doubt that petitioner has been and will continue to be irreparably harmed by the continued deprivation of his liberty in violation of his due process rights.

III.     BALANCE OF THE EQUITIES AND PUBLIC INTEREST.

---

[2] Because the court grants petitioner's requested relief on procedural due process grounds, it need not reach petitioner's substantive due process and/or unreasonable seizure claims.

The final two merged factors likewise weigh heavily in favor of petitioner. Although the government has a compelling interest in the enforcement of its immigration laws, that interest cannot justify the violation of petitioner's constitutional rights. See Index Newspapers LLC v. U.S. Marshals Serv., 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (internal quotation marks omitted); Vargas v. Jennings, 2020 WL 5074312, *4 (N.D. Cal. 2020) ("Just as the public has an interest in the orderly and efficient administration of this country's immigration laws . . . the public has a strong interest in upholding procedural protections against unlawful detention.") (internal quotation marks and citation omitted); Valle del Sol Inc. v. Whiting, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law[.]") (internal quotation marks omitted).

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Petitioner's PI Application **(Document No. 6)** is **granted** as set forth in this Order.

2. Respondents shall release petitioner forthwith, and shall not impose any release restrictions on petitioner that were not in place prior to petitioner's arrest or detention in this case unless deemed necessary at a future pre-deprivation bond hearing.

3. Respondents shall file with the court a Notice of Compliance within twenty-four (24) hours of releasing petitioner.

4. Respondents shall not re-detain petitioner during the pendency of these proceedings without providing petitioner with, at minimum, individualized notice describing the change in circumstances necessitating his arrest and/or detention, and a pre-deprivation bond hearing before an immigration judge. Petitioner shall not be detained unless respondents demonstrate at the pre-deprivation hearing that petitioner is a flight risk or a danger to the community, and that there are no combination of conditions that will reasonably assure petitioner's appearance and/or the safety of any other person in the community. If petitioner is again placed into detention in this District following proceedings in this case, respondents shall not transfer or remove petitioner from this District unless executing a final order of removal issued against petitioner.

5.  The parties shall meet and confer no later than **March 22, 2026**, to discuss what, if anything, remains to be done with respect to the Petition (Dkt. 1).

6.  Should the parties agree there is nothing further for the court to decide, they shall file a stipulation and proposed dismissal order no later than **March 24, 2026**.

7.  If the parties disagree as to whether anything remains to be decided with respect to the Petition, then the parties shall file a joint status report.  The status report shall, at a minimum, include the parties' positions on the following:  (1) what issues remain for decision; (2) with respect to each issue, whether both parties intend to stand on briefing already filed, and if so, pointing the court to the specific docket entries and page numbers that provide the relevant briefing on each of the issues that remain; (3) if either party believes further briefing is necessary, proposing a schedule for such briefing and lodging a proposed briefing order; and (4) whether the parties agree to consent to the assigned Magistrate Judge for all purposes.[3]  The parties' joint status report shall be filed no later than **March 24, 2026**.

8.  If the parties do not file a stipulation or joint status report by the deadlines set forth above, the court will deem that as consent that no further relief is available and dismiss the case without prejudice.

Dated this 17th day of March, 2026.

/s/

Fernando M. Olguin
United States District Judge

---

[3]  If the parties consent to the assigned Magistrate Judge, they may file a Consent to Magistrate Judge (form CV-11D) in lieu of a joint status report by the above deadline.